# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Employee Health Systems, LLC,

    Plaintiff,

v.

Sterling Commerce (America), LLC.

    Defendant.

Case No. 2:12-cv-611

Judge Michael H. Watson

## OPINION AND ORDER

In this diversity action, Employee Health Services, LLC ("Plaintiff") sues Sterling Commerce (America), LLC ("Defendant") for breach of contract and unjust enrichment. Defendant moves to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 24. For the following reasons, the Court **GRANTS** Defendant's motion.

### I. FACTS

The following facts are derived from Plaintiff's Second Amended Complaint ("Complaint"). Employee Health Systems, LLC ("Plaintiff") is an Ohio limited liability company with its principal place of business in Ohio. Sterling Commerce (America), LLC ("Defendant") is a Delaware limited liability company registered to do business in Ohio with an office in Dublin, Ohio.

In September 1995, Plaintiff and Defendant entered into a written agreement ("Agreement") pursuant to which Plaintiff agreed to provide comprehensive health and wellness services to Defendant. In order to provide these services, Plaintiff used certain of its proprietary know-how and intellectual property, including but not limited to business models, costs, methods, data, software, and ideas ("intellectual property"), and provided Defendant access to its employees. Pursuant to the Agreement, Plaintiff designed and developed a fitness center at Defendant's office, provided numerous related services, and fully performed all of its other obligations.

In 2006, Plaintiff terminated Jason Caldwell, one of Plaintiff's employees working at the fitness center, for underperformance. Defendant later instructed and required Plaintiff to rehire Caldwell, which Plaintiff did in order to preserve its relationship with Defendant. Plaintiff believes that at the time Defendant instructed Plaintiff to rehire Caldwell, Defendant had undertaken efforts to replace Plaintiff with a company owned by Plaintiff's employees, including Caldwell.

In December 2006, Plaintiff received notice that Defendant was considering other consultants to service its needs and later denied Plaintiff's request for an opportunity to submit a new service proposal. Shortly thereafter, Defendant indicated to Plaintiff that their relationship would in fact continue and presented to Plaintiff a new agreement, which Plaintiff executed. Plaintiff believes Defendant presented the new agreement in bad faith to induce Plaintiff's

reliance on the continuance of their relationship and keep key employees at the fitness center while Defendant continued its plans to replace Plaintiff with a company composed of Plaintiff's employees.

In January 2007, Defendant directed a Notice of Termination to Plaintiff stating, "[Defendant] is hereby providing notice of its intent to terminate the Agreement which shall be effective ten (10) days from receipt of this letter." Mot. to Dismiss, Ex. B 1, ECF. No. 24-3. On February 5, 2007, Plaintiff received a resignation notice from Caldwell, to be effective immediately.

That month, Defendant replaced Plaintiff with Hard Knocks, LLC ("Hard Knocks"), a company whose members and/or employees include Plaintiff's former employees, Jason Caldwell and Joseph Grunkelmeyer. Plaintiff believes Hard Knocks was organized by Caldwell and Grunkelmeyer, at the direction of Defendant, for the express purpose of replacing Plaintiff. Plaintiff further believes that since February 2007, Defendant, through Hard Knocks, has continued to unlawfully use Plaintiff's intellectual property.

Based on the above allegations, Plaintiff brings claims for breach of contract, unjust enrichment, and punitive damages.

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 1556 U.S. 662, 63 (2009). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged . . . ." *Id.* at 557–58 (internal citations omitted).

### III. DISCUSSION

The Court applies Ohio law in this case as the Agreement designates that Ohio law will govern its interpretation and enforcement. Agreement, Ex. A ¶ 7(d), ECF No. 24-2.

## A. Breach of Contract

Defendant argues Plaintiff has not properly pleaded a breach of contract claim.

To state a claim for breach of contract under Ohio law, a plaintiff must allege: (1) the existence of a contract; (2) performance by a plaintiff; (3) breach by a defendant; and (4) damage or loss to a plaintiff." *Savedoff v. Access Gp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). The only element in dispute here is whether Plaintiff properly alleged a breach by Defendant.

Plaintiff alleges that Defendant breached the express terms of the Agreement by: (1) using its access to Plaintiff's personnel to cause the formation of Hard Knocks and subsequently hiring Hard Knocks for its services; (2) requiring Plaintiff to rehire Jason Caldwell; and (3) terminating the Agreement for cause without providing Plaintiff an opportunity to cure a breach. Plaintiff further maintains Defendant breached the Agreement's implied covenant of good faith and fair dealing.

Defendant argues the actions that Plaintiff alleges constitute a breach do not violate any terms of the Agreement, and Ohio law does not recognize a claim for breach of the covenant of good faith and fair dealing in these circumstances.

For the following reasons, the Court finds Plaintiff has failed to properly allege Defendant breached the Agreement.

## 1. The Formation of Hard Knocks and Its Subsequent Hiring

Plaintiff first alleges that Defendant breached the Agreement by using its access to Plaintiff's personnel to facilitate the creation of Hard Knocks and subsequently hiring Hard Knocks, at a lower cost, to use Plaintiff's intellectual property to perform the same or similar services performed by Plaintiff. Plaintiff further argues that the Court cannot consider extrinsic evidence not referenced in the Complaint.

Defendant argues that nothing in the Agreement prohibits Defendant from causing the formation of a new company by Plaintiff's former personnel, and the Agreement does not contain a non-solicitation provision or restrictive covenant preventing Defendant from hiring Plaintiff's former personnel. The Court agrees.

Plaintiff has not pointed to a provision in the Agreement prohibiting Defendant's relevant actions, nor has it alleged that Defendant violated another Agreement between the parties prohibiting its actions. Moreover, Plaintiff's argument that the Court is not permitted to consider extrinsic evidence not referenced in the Complaint is without merit. To the extent that Plaintiff is referring to the Agreement and Notice of Termination, the Court is entitled to consider them because they are both referenced in the Complaint and central to Plaintiff's claim. *Jestice v. Butler Tech. and Career Dev. Schs. Bd. of Educ.*, No. 1:11-cv-101, 2012 WL 71021, at *2 (S.D. Ohio Jan. 10, 2010) ("documents attached to a Rule 12 motion are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim."). To the

extent Plaintiff means any other extrinsic evidence not referred to in the Complaint, the Court has not considered any such evidence.

Accordingly, absent the existence of a provision or agreement that Defendant's actions could plausibly violate, Plaintiff cannot state a claim for relief on these grounds.

### 2. Requiring Plaintiff to Rehire Jason Caldwell

Plaintiff next alleges that Defendant breached the express terms of paragraph six of the Agreement by "instructing and requiring" Plaintiff to rehire Jason Caldwell after Plaintiff terminated his employment.

Defendant argues paragraph six did not prohibit Defendant from requesting that Plaintiff rehire an employee, and nothing obligated Plaintiff to grant such a request.

The relevant portion of paragraph six states:

> Independent Contractor; Insurance. In performing Consultant's obligations and Services hereunder, Consultant shall be acting at all times as an independent contractor, and nothing contained herein shall be deemed or construed to create any employer/employee relationship. . .
>
> Consultant assumes full responsibility for the actions of Consultant's employees while performing the Services. ***Consultant shall be solely responsible for their supervision, daily direction and control***, payment of salary. . . worker's compensation, disability and insurance benefits. . . .

Agreement, Ex. B ¶ 6, ECF No. 24-2 (emphasis added).

Plaintiff argues that the emphasized portion of this paragraph demonstrates the parties' express agreement that Plaintiff would have full control over its employees and Defendant violated this express term by requiring it to rehire Jason Caldwell.

Defendant responds that this provision merely addresses Plaintiff's responsibility to pay its employees and in no way prevents Defendant from requesting Plaintiff hire an employee. The Court agrees. Although this provision grants Plaintiff sole responsibility for its employees' supervision and daily control, it does not prohibit Defendant from requesting Plaintiff rehire an employee. Moreover, Plaintiff's allegation that Defendant required Plaintiff to rehire Caldwell is without merit, as Plaintiff itself states that it complied with Defendant's request in order to preserve their business relationship.

Plaintiff has therefore failed to state a plausible claim for breach of contract on this ground.

### 3. Termination of the Agreement

Plaintiff next alleges that Defendant breached paragraph two of the Agreement by terminating it for cause in contravention of the Agreement's terms.

Defendant argues that it terminated Plaintiff without cause consistent with paragraph two.

Paragraph two states in relevant part:

> Term. The term of this Agreement shall commence on the date first set forth above and shall terminate upon earlier of completion of the Services as set forth in Appendix A, or upon ten (10) days written notice of termination by [Defendant] to [Plaintiff] pursuant to Section 7(b) of this Agreement. Notwithstanding any other provision of this Agreement, either party shall have the right at any time to terminate the Agreement upon written notice to the other party in the event the other party shall breach or violate any portion of this Agreement, and such breach or violated is not cured within five (5) days after receipt of written notice thereof.

Agreement, Ex. B ¶ 2, ECF No. 24-2. Provision 7(b) of the Agreement states: "Any notice in connection with the subject matter of this Agreement shall be in writing and shall be effective when delivered personally to the other party for whom intended, or five (5) days following deposition of the same into the United States mail. . . ." *Id.* ¶ 7(b).

Plaintiff contends that the express language of this paragraph contemplates only termination for cause. It further alleges that Defendant terminated the Agreement for cause, but did so without giving Plaintiff the opportunity to cure any breach as required by the provision.

Defendant asserts that the language in this provision expressly permits Defendant to terminate the Agreement without cause upon ten days written notice to Plaintiff, which it argues it properly did.

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access*

*Gp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). "The role of courts in examining contracts is to ascertain the intent of the parties. . . [,which] is presumed to reside in the language they choose to use in their agreement. . . . Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Id.* (internal citations and quotations omitted).

The plain language of paragraph two is unambiguous. It outlines three circumstances under which the Agreement may be terminated: (1) upon the completion of Plaintiff's services; (2) upon Defendant's ten days written notice to Plaintiff; or (3) upon breach by either party that is not cured within five days of receipt of a written notice of the breach by the non-breaching party.

At issue here is the second circumstance, which provides for termination "upon ten (10) days written notice of termination by [Defendant] to [Plaintiff]. . . ." By not expressly requiring cause or imposing any other conditions on termination, this language is plainly read to allow Defendant to terminate the Agreement for any reason so long as it provides Plaintiff ten days' written notice of the termination. If the parties intended to require cause, they should have included such language in the agreement; the absence of "without cause" language does not inherently create a "for cause" requirement. In the absence of a "for cause" requirement, the

Court will not impose a condition of termination that contradicts the plain language.[1]

Defendant provided Plaintiff with ten days' written notice of termination as required by the Agreement, and Plaintiff does not dispute the validity of this notice. ECF No. 24-3. Accordingly, Plaintiff cannot plausibly state a claim for breach of contract on this ground.[2]

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff next alleges that Defendant breached the Agreement by breaching the implied covenant of good faith and fair dealing by: (1) deciding, in bad faith, to terminate Plaintiff to replace it with Hard Knocks; (2) actually terminating the Agreement in order to replace Plaintiff with the less qualified Hard Knocks; and (3) terminating Plaintiff in order to unlawfully use its intellectual property.

---

[1] In support of its argument, Defendant cites three cases interpreting similar contract language as allowing for termination without cause. See *James H. Washington Ins. Agency v. Nationawide Mut. Ins. Co.*, 643 N.E.2d 143, 147 (Ohio App. Ct. Dist. 8 April 8, 1993); *Beard v. Nationwide Ins. Co.*, No. 2010-CA-31, 2011 WL 1842999, at *3–4 (Ohio App. Ct. Dist. 2 May 13, 2011); *Kelly v. State Farm Mut. Auto Ins. Co.*, 218 S.W.3d 517, 523 (Mo. App. Ct. 2007). Plaintiff contends these cases are inapposite because (1) they involved contracts between insurance companies and agents; (2) the Agreement includes an additional termination option; and (3) the contract language in those cases granted both parties to the contract the right to terminate without cause, while here only Defendant would be granted such a right. Plaintiff does not explain the significance of these differences and the Court does not find any. Therefore, while not the basis for the Court's ruling, these cases offer further support for the Court's conclusion.

[2] To the extent Plaintiff argues that Defendant terminated Plaintiff pursuant to the third method in the agreement—with cause but without giving Plaintiff an opportunity to cure the breach— Defendant's Notice of Termination indicates it intended to provide ten days' notice and makes no mention of a breach. Again, this Notice is consistent with the second method of termination in paragraph two and therefore does not constitute a breach of the Agreement.

Defendant argues that the Agreement is an at-will, independent contractor agreement, which, as a matter of Ohio law, does not contain covenants of good faith and fair dealing.

Plaintiff responds that the Agreement is not an at-will employment or independent contractor agreement, but rather a service agreement.

It is well settled that "Ohio law does not recognize a good-faith-and-fair-dealing requirement in employment-at-will relationships." *Cramer v. Fairfield Med. Ctr.*, 182 Ohio App.3d 653, 663 (Ohio App. Ct. 5th Dist. June 30, 2009) (citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 105 (Ohio 1985)).

The threshold question is thus whether the Agreement created an employment-at-will relationship between Plaintiff and Defendant.

The Court has already found that the Agreement is an at-will agreement in which Defendant had the right to terminate Plaintiff without cause upon ten days written notice. The issue is thus whether the Agreement is an at-will *employment* Agreement. The Court determines it is not.

The Agreement is titled "Independent Contractor Agreement." Agreement, Ex. B, ECF No. 24-2. It provides that Plaintiff will perform for Defendant certain personal services. *Id.* ¶¶ 2–3. It further states: "Independent Contractor; Insurance. In performing [Plaintiff's] obligations and Services hereunder, Consultant shall be acting at all time as an

independent contractor, and nothing contained herein shall be deemed or construed to create any employer/employee relationship. . . between [Plaintiff] and [Defendant]. . . . *Id.* ¶ 6.

This language and the title of the Agreement expressly indicate that the Agreement is an independent contractor agreement. The fact that the Agreement stated Plaintiff would provide its personal services does not change that, as Plaintiff agreed to provide its services as an independent contractor.[3] Furthermore, because the Agreement allows Defendant to terminate Plaintiff without cause upon ten days' written notice, the Agreement established an at-will relationship between Plaintiff and Defendant. *See Kegelmeyer v. Fisher*, No. 9-90-45, 1991 WL 218056, at *2 (Ohio App. Ct. Dist. 3rd Aug. 29, 1991) (applying the employment at will doctrine to a relationship between an employer and an independent contractor).

Accordingly, the Agreement does not contain an implied covenant of good faith and fair dealing, and Plaintiff cannot state a claim for breach of contract on this ground.[4]

---

[3] The Court is aware that it is not bound by what the Plaintiff's call themselves in their Agreement, as there are several factors to consider in determining whether an individual is considered an employee or an independent contractor. *Bostic v. Connor*, 37 Ohio St.3d 144, 46 (1988). However, Plaintiff has not alleged any facts indicating that it was Defendant's employee, and in fact argues that it was not.

[4] Plaintiff also states that its allegations in paragraphs 16–19 of the Complaint support a claim for promissory estoppel. However, the Court declines to consider this alternative argument because it is raised for first time in Plaintiff's response. *See Quinn v. Ohio State Highway Patrol*, No. 2:07-cv-187, 2007 WL

In sum, Plaintiff has failed to properly allege Defendant breached the Agreement and therefore cannot state a breach of contract claim.

## B. Unjust Enrichment

Defendant next argues that Plaintiff's unjust enrichment claim is precluded by Ohio law, and in the alternative, is barred by the Ohio Uniform Trade Secrets Act ("UTSA"). Because the Court finds that Plaintiff's claim is preempted by the UTSA, it need not address its preclusion under other Ohio law.

### 1. The Uniform Trade Secrets Act

Defendant argues Plaintiff's unjust enrichment claim is preempted by the UTSA.

The UTSA provides a cause of action for the misappropriation of trade secrets. Ohio Rev. Code §§ 1333.61–1333.63. It displaces conflicting tort, restitutionary, and other Ohio laws providing civil remedies for misappropriation of trade secrets. *Id.* at § 1333.67. Courts have interpreted the UTSA to bar claims "based entirely on factual allegations of misappropriation of trade secrets." *Miami Valley Mobile Health Servs, Inc. v. ExamOne Worldwide, Inc.*, 852 F.Supp.2d 925, 940 (S.D. Ohio 2012) (internal citations and quotations omitted).

The UTSA defines "trade secret" as:

---

3308014, at *5 (S.D. Ohio Nov. 6, 2007) (applying the standards for a motion to dismiss in considering a motion for judgment on the pleadings).

> "[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. § 1333.61. However, the predominant view among courts is that the UTSA preempts not only claims involving trade secrets, but also "any claim regarding 'theft or misuse of confidential proprietary, or otherwise secret information falling short of trade secret (e.g., idea misappropriation, information piracy, theft of commercial information, etc.).'" *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp.2d 912, 919 (S.D. Ohio 2011) (internal citation omitted).

The key question is therefore whether Plaintiff's unjust enrichment claim is based entirely on allegations that essentially seek a remedy for the misappropriation of either trade secrets or confidential proprietary or secret information such that the claim is preempted by the UTSA. The Court finds that it does.

The entire basis for Plaintiff's unjust enrichment claim is that following the termination of the Agreement, Defendant continued to

unlawfully and unjustly use and benefit from Plaintiff's intellectual property without compensating Plaintiff. Plaintiff defines its intellectual property as "including, without limitation, business models, formulas, costs, prices, compensation, instructional material, methods, processes, systems, research, developments, techniques, data, designs, software, technologies, inventions, discoveries, and ideas." Second Amend. Compl., ¶ 7, ECF No. 22. This claim essentially seeks a remedy for the misappropriation of Plaintiff's trade secrets or, at least, confidential, proprietary information.

Plaintiff argues that it does not allege the existence of a trade secret. But, Plaintiff's definition of its intellectual property includes the same type of information listed in the UTSA's broad definition of trade secrets (e.g., business models, costs, prices, processes). And although Plaintiff does not specifically allege that its intellectual property derives independent economic value or is the subject of efforts to maintain secrecy, it does characterize its intellectual property as proprietary. Moreover, if Plaintiff's proprietary intellectual property is not confidential or legally protected in any other manner, and if it does not constitute trade secrets, then Plaintiff has failed to allege that its intellectual property is protected in such a way that renders it unjust for Defendant to use and benefit from it without compensating Plaintiff. Therefore, Plaintiff's intellectual property must be a trade secret or otherwise confidential in some way, otherwise under

Plaintiff's own argument, it would fail to state a claim for unjust enrichment even absent preemption.

Furthermore, although there is conflicting authority on the matter, "the majority view [is that] displacement of common-law claims may precede the [Courts'] determination of whether the information at issue constitutes a trade secret." *Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Mfg., Inc.*, 649 F.Supp.2d 702, 722 (N.D. Ohio 2009). Therefore, even if it is unclear whether Plaintiff's intellectual property actually constitutes a trade secret, or other confidential information falling short of one, the Court need not make that determination before considering preemption because Plaintiff has alleged the existence of such a trade secret or confidential information.

Plaintiff also maintains it has not alleged misappropriation. However, Plaintiff's allegation that Defendant obtained intellectual property unlawfully and is using it to its benefit is essentially an allegation of misappropriation. *See* Ohio Rev. Code § 1333.61 (defining misappropriation as the acquisition of a trade secret by one who knows or has reason to know it was acquired by improper means).

In sum, Plaintiff's unjust enrichment claim for the unlawful use of its intellectual property in actuality seeks a remedy for Defendant's

misappropriation of Plaintiff's trade secrets as that term is defined in the UTSA, and is therefore preempted by the UTSA.[5]

## C. Punitive Damages

Defendant argues Plaintiff is not entitled to punitive damages. Because the Court finds that Plaintiff has failed to state its claims, it need not address whether it is entitled to punitive damages.

## IV. CONCLUSION

Plaintiff has failed to state a claim for breach of contract because it has not adequately alleged Defendant breached the agreement. Further, Plaintiff's unjust enrichment claim is preempted by the UTSA. Therefore, the Court **GRANTS** Defendant's motion to dismiss.

The Clerk shall remove ECF No. 24 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

*[signature]*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] Notably, Plaintiff disavows asserting a claim for the misappropriation of trade secrets and does not seek leave to amend its Complaint to add such a claim. Accordingly, the Court dismisses its unjust enrichment claim.